UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY ANN DI LAPI AND SALVATORE DI LAPI, as Successors in Interest and Proposed Administrators of the Estate of ANTHONY DI LAPI, deceased, MARY ANN DI LAPI, in her individual capacity, and SALVATORE DI LAPI, in his individual capacity,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF NEW YORK, STEPHEN CARACAPPA and LOUIS EPPOLITO<br><br>Defendants, | No. 06-CV-3101 (RJD) (JMA) |

**PLAINTIFFS' REPLY TO DEFENDANT CITY OF NEW YORK'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I. California Law Applies ...................................................................................................1

II. The City of New York is Vicariously Liable .................................................................4

    A. The City is Vicariously Liable Under California Law ...............................................5

    B. The City is Vicariously Liable Under New York Law ...............................................7

III. Plaintiffs' Claims Are Timely..........................................................................................9

    A. New York Law ............................................................................................................9

        1. CPLR § 215(8) and EPTL § 5-4.1 Apply to Municipalities .................................9

        2. CPLR § 215(8) and EPTL § 5-4.1 Apply to Vicariously Liable Defendants .................10

        3. Plaintiffs Have Satisfied New York's Notice of Claim Requirement. ...........................12

    B. California Law............................................................................................................14

IV. This Court Does Not Need to Relitigate Eppolito and Caracappa's Involvement in Di Lapi's Death Out of Fairness Concerns to the City ................................................................14

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Cunninham v. New York City*, 04 CIV. 10232 (LBS), 2008 WL 1944696 (S.D.N.Y. May 1, 2008) ........12

*Edwards v. Pulitzer Pub. Co.*, 716 F. Supp. 438 (N.D. Cal. 1989) ................................................................1

*Gentile v. Cnty. of Suffolk*, 711 F. Supp. 724 (E.D.N.Y. 1989)..................................................................13

*Gibbs v. City of New York*, 714 F. Supp. 2d 419 (E.D.N.Y. 2010) ......................................................... 7, 8

*GlobalNet Fin. Com, Inc. v. Frank Crystal & Co., Inc*, 449 F.3d 377 (2d Cir. 2006) .....................................2

*Golden v. Wyeth, Inc.*, 04-CV-2841 JS ARL, 2013 WL 4500879 (E.D.N.Y. Aug. 20, 2013) ......................2

*Hamilton v. Accu-Tek*, 47 F. Supp. 2d (E.D.N.Y. 1999) ......................................................................... 3, 4

*Levy v. Marriott Int'l, Inc.*, 08-CV-4795 ALC, 2011 WL 1542082 (E.D.N.Y. Apr. 21, 2011)....................3

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012)................................. 2, 3

*Medina v. Delta Air Lines, Inc.*, 09-CV-4018 NGG LB, 2011 WL 3625110
    (E.D.N.Y. Aug. 16, 2011)...............................................................................................................9

*Morillo v. City of New York*, No. 95 Civ. 2176, 1997 WL 72155 (S.D.N.Y. Feb. 20, 1997).......................8

*O'Connor v. U.S. Fencing Ass'n*, 260 F. Supp. 2d 545 (E.D.N.Y. 2003) .....................................................4

*Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d (2d Cir. 1996) ............................................................3

*United States v. Caracappa*, 614 F.3d 30 (2d Cir. 2010).............................................................................14

*United States v. Yannotti*, 541 F.3d 112 (2d Cir. 2008)..............................................................................14

*Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425 (S.D.N.Y. 2012) ..........................................................2

*Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010) ..........................................................................................5

*Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375 (S.D.N.Y. 2009) ..................................... 12, 13

*Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411 (E.D.N.Y. 2013) ............................................... 2, 3

**State Cases**

*Alford v. St. Nicholas Holding Corp.*, 218 A.D.2d (N.Y. App. Div. 1st Dep't 1995) ...............................11

*Beary v. Rye*, 44 N.Y.2d 398 (N.Y. 1978) .................................................................................................12

*Burke v. State*, 565 N.Y.S. 2d 728 (N.Y. App. Div. 2d Dep't 1991) ..........................................................9

*Campbell v. City of New York*, 4 N.Y.3d 200, 201–02, 825 N.E.2d 121 (N.Y. 2005)........................... 9, 10

*Clemens v. Nealon*, 608 N.Y.S.2d 370 (N.Y. App. Div 3d Dep't 1994) .....................................................9

*Delfino v. Agilent Technologies*, Inc., 145 Cal. App. 4th 790 (Cal. App. Ct. 2006) .........................................6

*Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899 (Cal. Ct. App. 2002)......................................................6

*Farmers Ins. Grp. v. Cnty. of Santa Clara*, 906 P.2d 440 (Cal. 1995).................................................... 5, 6

*Hirt v. Mancuso*, 82 A.D.3d 1647 (N.Y. App. Div. 4th Dep't 2011)..........................................................11

*Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1109, 751 P.2d 923 (Cal. 1988)................................................14

*Jordan v. Briton*, 128 A.D.2d 315 (N.Y. App. Div. 4th Dep't 1987).........................................................10

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 907 P.2d 358 (Cal. 1995) ...................................... 5, 6, 7

*Mary M. v. City of Los Angeles*, 54 Cal. 3d (Cal. 1991)................................................................................6

*Matter of Pipitone v. City of New York*, 38 A.D.3d 557 (N.Y. App. Div. 2d Dep't 2007) ........................12

*Monroe v. NuMed, Inc.*, 680 N.Y.S.2d 707 (N.Y. App. Div. 3rd Dep't 1998)..............................................4

*Morris v. City of New York*, 16 Misc. 3d 1126(A) (N.Y. Sup. Ct. Aug. 21, 2007) ....................................12

*Ogle v. State*, 142 A.D.2d 37, 39 (N.Y. App. Div. 3d Dep't 1988) ............................................................10

*Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519 (N.Y. 1994).....................................................................3

*Perry v. County of Fresno*, 215 Cal. App. 4th 94 (Cal. App. Ct. 2013) .......................................................6

*Plummer ex rel. Heron v. New York City Health & Hosps. Corp*, 98 N.Y.2d 263 (N.Y. 2002) ....................13

*Ross v. Saravanos*, 2011 WL 2011673 (N.Y. Sup. Ct. May 7, 2011) .................................................. 11, 12

*Rothenberg v. City of New York*, 851 N.Y.S.2d (N.Y. Sup. Ct. July 18, 2007) ...........................................8

*Schultz v. Boy Scouts of America, Inc.*, 65 N.Y. 2d 189 (N.Y. 1985).................................................. 1, 2, 4

*Wright v. City of Newburgh*, 259 A.D.2d (N.Y. App. Div. 2d Dep't 1999) ...............................................10

*Young v. New York City Health & Hosps. Corp*, 91 N.Y.2d 291 (N.Y. 1998)...........................................13


**Statutes & Rules**

C.P.L.R. § 202..................................................................................................................................................7

C.P.L.R. § 205(a) .............................................................................................................................................9

C.P.L.R. § 213-b............................................................................................................................................12

C.P.L.R. § 213-c............................................................................................................................................11

C.P.L.R. § 214-a............................................................................................................................................10

C.P.L.R. § 215(8)....................................................................................................................................*passim*

E.P.T.L. § 5-4.1 .......................................................................................................................................*passim*

G.M.L. § 50-e......................................................................................................................................... 12, 13

G.M.L. § 50-i.................................................................................................................................................10

**INTRODUCTION**

The City's sweeping representations about the law governing Plaintiffs' state law claims for wrongful death, assault and battery, and respondeat superior simply do not hold up. Nothing the City says changes the essential facts warranting summary judgment for the Di Lapi Plaintiffs: (1) Eppolito and Caracappa are collaterally estopped from contesting the facts underlying their criminal convictions; (2) those facts establish liability for assault, battery, and wrongful death, as the City does not contest; (3) Eppolito and Caracappa were acting in the scope of their employment under both California law, which governs, as well as New York law, when they committed the acts that make them liable for assault, battery, and wrongful death; (4) and Plaintiffs' wrongful death, assault and battery, and respondeat superior claims—the only state law claims they are pursuing—are timely. This Court should enter summary judgment for the Di Lapi Plaintiffs on their state law claims.

**ARGUMENT**

**I. California Law Applies**

The City does not dispute that there are actual conflicts between California and New York law, with respect to vicarious liability and the scope of wrongful-death damages, which require choice of law analysis. *See* Pl. Br at 6–7. Nor does the City dispute that New York's choice of law rules point to the state where the tort occurred. *See* City Br. at 2. The only issue is whether that location—"the place where the last event necessary to make the [defendant] liable," *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y. 2d 189, 195 (N.Y. 1985)—is New York or California.

The City's argument that the "last, and only, acts necessary . . . to make the City liable occurred in New York," City Br. at 3, fails as a matter of logic and of law. If all that had occurred was Caracappa's conduct in New York[1] —searching for Di Lapi's address and disclosing it to

---

[1] Caracappa's misconduct also extended into California: he reached into that state to contact law enforcement for Di Lapi's address. *See, e.g., Edwards v. Pulitzer Pub. Co.*, 716 F. Supp. 438, 440 (N.D. Cal. 1989) (holding that

1

Kaplan—the City could not be liable for Di Lapi's wrongful death, assault and battery. *No one* could be liable for those torts until Di Lapi was shot and killed, in California. *See Youngman v. Robert Bosch LLC*, 923 F. Supp. 2d 411, 418–19 (E.D.N.Y. 2013) ("*Youngman* suggests that the last event necessary to render the defendants liable in this case was the sale of the table saw in Staten Island. But that reading of the rule is nonsensical: if Charkiewicz had never used the table saw after buying it in New York . . . he would never have been injured and the defendants could not be held liable for anything at all.").

In addition, although the City quotes *Schultz*'s "last event necessary" rule, it "distorts its meaning by omitting the very next sentence from that opinion: 'Thus, the locus in this case is determined by where the plaintiffs' injuries occurred.'" *Youngman*, 923 F. Supp. 2d at 418 (quoting *Schultz*, 65 N.Y.2d at 195). "*Schultz* is by no means an outlier. Virtually every pertinent case confirms that a tort 'occurs' for purposes of choice-of-law analysis at the location of the accident." *Id.* (collecting cases); *see also Golden v. Wyeth, Inc.*, 04-CV-2841 JS ARL, 2013 WL 4500879, at *2 (E.D.N.Y. Aug. 20, 2013) ("Courts to address this issue have consistently made clear that the location of the tort is where the plaintiff was injured, rather than the origin of the conduct causing injury."); Pl. Br. at 9.

None of the cases the City cites compel application of New York law. First, both *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012), and *Wultz v. Bank of China Ltd.*, 865 F. Supp. 2d 425, 428–29 (S.D.N.Y. 2012), applied New York's choice of law regarding *conduct-regulating* rules, not the loss-allocating rules that apply here. *See GlobalNet Fin. Com, Inc. v. Frank Crystal & Co., Inc*, 449 F.3d 377, 384 (2d Cir. 2006) (loss-allocating rules include "those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit") (quotation omitted). Defendants cannot dismiss this distinction as "purely academic," City Br. at 4 n.5; choice

---

defendant's telephone call and letter to California were basis to assert jurisdiction over defendant in California, because by contacting California defendant had "invok[ed] the benefits and protections of its laws").

of law in New York turns on it. *See Padula v. Lilarn Properties Corp.*, 84 N.Y.2d 519, 521 (N.Y. 1994) ("[A] distinction must be made between a choice-of-law analysis involving standards of conduct and one involving the allocation of losses."). *Licci* itself explained that "interest analysis distinguishes between two sets of rules: conduct-regulating rules and loss-allocating rules." *Licci*, 672 F.3d at 158. *Licci* then applied the law of the location of the conduct, rather than the location of injury, explaining that the location of "plaintiffs; injuries" and "plaintiffs' domicile . . . do not govern where, as here, the conflict pertains to a conduct-regulating rule." *Id.*[2]

Second, *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1 (2d Cir. 1996), addressed a markedly different situation: the explosion of a bomb in a plane that occurred over Scotland, which had *no* connection to either the defendant-airline or the decedent. The court explained that where "the place of the crash is . . . random" and "where no damages were incurred in Scotland, there is really no reason at all why the compensability of the plaintiff's damages should be governed by Scottish law." *Id.* at 13–14. In contrast, the location of Anthony Di Lapi's death was not random; it was his and Plaintiff Salvatore Di Lapi's domicile. *See Levy v. Marriott Int'l, Inc.*, 08-CV-4795 ALC, 2011 WL 1542082, at *2 (E.D.N.Y. Apr. 21, 2011) (distinguishing *Pescatore* as a case that "involve[s] a fortuitous act"). Moreover, the result in *Pescatore* is consistent with the outcome Plaintiffs seek here: *Pescatore* invoked the jurisdiction's laws where damages were incurred, the decedent and plaintiff's domicile. *Youngman*, 923 F. Supp. 2d at 418 n.3 ("*Pescatore* applied the law of Ohio because that was where the plaintiff, an Ohio resident, had suffered the harm forming the basis of her wrongful death claim.").

Finally, *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330 (E.D.N.Y. 1999), actually supports Plaintiffs' position. In *Hamilton*, the Court concluded that the last necessary event for liability in a

---

[2] Defendants also argue that the City's conduct with respect to negligent hiring, supervision, and retention took place in New York, and that conduct-regulating rules govern those claims. This is no matter, however, because Plaintiffs have decided not to continue pressing those claims.

3

shooting death was the shooting, and it explained that when a New York visitor was shot in California, California had an "intense state interest in the matter . . . [because] each state provides for the physical safety of those living in or traveling through it." *Id.* at 342. Here, the interest of California is even greater, since Di Lapi was not merely traveling through, but a domicile of that state.

In the end, the City simply asks this Court to apply a special circumstance or public policy exception and find that New York law on vicarious liability applies because the City is a New York municipal corporation. But the City provides no legal support for its argument that it should be treated differently from any other employer because of its status as a municipality. Nor does the City even attempt to explain how enforcement of California law on vicarious liability "would violate some fundamental principle of justice, some prevalent conception of good morals, [or] some deep-rooted tradition of the common weal." *Schultz*, 65 N.Y.2d at 202 ("[P]arty seeking to invoke [a public policy exception] has the burden of proving that the foreign law is contrary to New York public policy. It is a *heavy burden* for public policy is not measured by individual notions of expediency and fairness or by a showing that the foreign law is unreasonable or unwise.") (emphasis added). As the location of Anthony Di Lapi's death, California law applies.[3]

## II.  The City of New York is Vicariously Liable

For the reasons explained, California law on vicarious liability applies to these claims. However, whether California or New York law is applied, the City is vicariously liable.

---

[3] The City does not contest application of California law with respect to damages, nor could it. *See Monroe v. NuMed, Inc.*, 680 N.Y.S.2d 707, 708 (N.Y. App. Div. 3rd Dep't 1998) (rejecting defendant's argument that Florida's wrongful-death statute could not be applied because it, like California, permits recovery of noneconomic damages: "[D]efendant has failed to demonstrate that the variance between the respective New York and Florida wrongful death statutes supports a finding that the letter is 'truly obnoxious' to the public policy of New York").

Those rare cases that apply a public policy exception do so because the other jurisdiction's law is flatly contrary to New York's. *See, e.g.*, *O'Connor v. U.S. Fencing Ass'n*, 260 F. Supp. 2d 545, 560 (E.D.N.Y. 2003). California's law, on both damages and vicarious liability, is not.

4

### A. The City is Vicariously Liable Under California Law

The City agrees that California's law on vicarious liability is "broader" than in New York. City Br. at 9; *see Xue Lu v. Powell*, 621 F.3d 944, 948 (9th Cir. 2010) ("California no longer follows the traditional rule that an employee's actions are within the scope of employment only if motivated, in whole or part, by a desire to serve the employer's interests," but instead it looks "to the foreseeability of the employee's conduct, whether it be authorized or unauthorized, tortious or criminal.") (citations and internal quotations omitted). But the City claims that it would not be vicariously liable because Eppolito and Caracappa's misconduct did "not arise from the conduct of the employer's enterprise." City Br. at 9. That argument ignores the fact that their access to Di Lapi's address *directly arose* from their authority as New York City police officers: Caracappa was part of an NYPD unit that acted as a clearinghouse for organized crime. He was responsible for conducting proactive investigations and maintaining information on organized crime members. *See* P17–23. Caracappa's conduct in seeking and maintaining information about organized crime members was not his "own, independent invention," City Br. at 10, but a routine and mandatory part of his job.

The California Supreme Court has made clear that, even where an employee's conduct is driven by personal motives, an employer will still be liable if that conduct is an "outgrowth" of one's job responsibilities. *Lisa M. v. Henry Mayo Newhall Mem. Hosp.*, 907 P.2d 358, 362 (Cal. 1995). "The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. . . . [A]n employee's tortious act may be within the scope of employment even if it contravenes an express company rule and confers no benefit to the employer." *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 906 P.2d 440, 448–49 (Cal. 1995); *see also Lisa M.*, 907 P.2d at 361 (employee "need not have intended to further the employer's interests").

The City relies entirely on California cases from the intermediate court of appeals in which

5

an employee's conduct was *not* an outgrowth of his regular job assignments. In *Delfino v. Agilent Technologies, Inc.*, the court held that an employee's use of his employer's computer to "log on to a private Internet account to send messages," which "was *never part of [the employee's] job duties*" could not give rise to vicarious liability. 145 Cal. App. 4th 790, 813 (Cal. App. Ct. 2006) (emphasis added). And in *Perry v. County of Fresno*, the court held that there was not vicarious liability because there was no "causal nexus" between a corrections officer's job duties and his campaign to write "fake letters [to a family] in an attempt to persuade [them] to drop their non-work-related personal injury action against him." 215 Cal. App. 4th 94, 102 (Cal. App. Ct. 2013).

By contrast, here, Caracappa's conduct—requesting and maintaining information regarding the location of an organized crime member—was a regular and requisite part of his job. His tortious conduct—wrongfully disclosing that information—is thus causally connected, and an "outgrowth" of his normal job requirements. Moreover, by carrying out his duties, Caracappa exercised his "unique and formidable power and authority [as a] police officer[] . . . over members of the public or people under their control." *Id.* at 104 (quoting *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202 (Cal. 1991)).[4] It was entirely foreseeable that Caracappa would abuse that authority. *See Perry*, 215 Cal. App. 4th at 102 (explaining that an employer is vicariously liable where "the risk of the tort [is] a generally foreseeable consequence of the enterprise"). Indeed, the NYPD was aware Eppolito had committed the same misconduct six years prior. *See* Pl Br. at 15–16. And the City admits that the NYPD "recognized that the misuse of confidential information was a serious hazard" and implemented some security procedures to prevent it. City Def. Mot for SJ. at 97–98.

---

[4] The City suggests that vicarious liability for police is limited in California to torts committed by police when they encounter individuals "while on patrol" or when they take individuals into "custody." City Br. at 10–11. California has never so limited vicarious liability. The test is simply whether a police officer's conduct is foreseeable and arises out of his employment. *Lisa M.*, 907 P.2d at 361 (employer is liable where officer's tort has "a causal nexus to the employee's work"); *Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899, 909 (Cal. Ct. App. 2002) (recognizing that vicarious liability attaches to the conduct of an officer who was "invoking his police power when he committed the . . . misconduct"); *Farmers Ins. Grp.*, 906 P.2d at 454 (explaining "[w]hen officers abuse their authority by committing crimes against members of the community, they violate the public trust and may erode the community's confidence in the integrity of its police force").

6

Finally, the City argues that finding it vicariously liable would not further California's policy considerations underlying vicarious liability. City Br. at 11. Clearly, however, finding the City liable would further one of the main policy goals of vicarious liability, "assuring compensation to victims." *Lisa M.*, 907 P.2d at 366. In addition, vicarious liability would help "prevent[] future injuries," because the "imposition of vicarious liability would likely lead to adoption of some further precautionary measures." *Id.* The City claims that there are no precautionary measures it could have taken, because Caracappa requested Di Lapi's address from law enforcement contacts in California, over whom the City had no control. City Br. at 12. But Plaintiffs have pointed to numerous ways in which the City should have more carefully supervised and disciplined officers to have prevented the very misconduct in this case. *See* Pl's Br. in Opposition to City's Mot for SJ at 32–70.

### B. The City is Vicariously Liable Under New York Law

Although California law clearly governs Plaintiffs' vicarious liability claim, the City's argument that it cannot be vicariously liable under New York law because "leaking Di Lapi's address" did not "further the City's purposes," City Br. at 7, also fails.[5] The City simply ignores the fact that the means Caracappa used to obtain Di Lapi's address, outlined above, are precisely the conduct he routinely engaged in to discharge his responsibilities as a detective with the Organized Crime Homicide Unit in the Major Case Squad. He was "surely not acting as a private citizen," *Gibbs v. City of New York*, 714 F. Supp. 2d 419, 423 (E.D.N.Y. 2010), when he reached out to law enforcement officers in California for Di Lapi's address and recorded it in NYPD's organized-crime case folders.

The City's argument distorts and narrows New York law on vicarious liability. The fact that Caracappa carried out his job responsibilities tortiously, causing him to be guilty of "aiding and

---

[5] Given that California law applies, and thus governs vicarious liability, the Court need not address whether the City is also vicariously liable under New York law. New York's choice of law rules apply one state's substantive law, in contrast to its timeliness borrowing statute, which requires Plaintiffs' claims to be timely in both New York and California. *See* N.Y. C.P.L.R. § 202.

7

abetting murder," City Br. at 7, cannot prevent the City from being vicariously liable. If the City's formulation of New York law were correct, employers would *never* be vicariously liable for an employee's tort, because committing a tort is never in the interest of an employer. For example, crashing a patrol car does not further the NYPD's interests, but the City is still vicariously liable because *driving* a car is conduct within the scope of a police officer's job. *See, e.g.*, *Rothenberg v. City of New York*, 851 N.Y.S.2d 60, at *3 (N.Y. Sup. Ct. July 18, 2007) (finding off-duty officer who was driving unmarked car and conducting surveillance "was within the scope of his duty as a police officer when his vehicle struck the plaintiff's car").

The City's efforts to distinguish *Gibbs v. City of New York* thus fall flat. The allegation in that case was that Eppolito intentionally framed Gibbs for a murder he knew Gibbs did not commit, leaving the real perpetrator to go free. That tort could not possibly further the NYPD's interest. But the Court still held the City vicariously liable because Eppolito's conduct, including interviewing witnesses and writing reports, was "the work of a detective working on behalf of the City of New York." 714 F. Supp. 2d at 423. The Southern District reached the same conclusion in *Morillo v. City of New York*, in which it granted partial summary judgment on the City's liability for plaintiff's false imprisonment and malicious prosecution. No. 95 Civ. 2176, 1997 WL 72155 (S.D.N.Y. Feb. 20, 1997). *Morillo* found that, where officers had admittedly been acting in the scope of their employment while arresting plaintiff and testifying at a grand jury hearing, the City would be liable for the torts (false testimony that caused the plaintiff to spend three years wrongfully incarcerated) arising out of those actions. *Id.* at *8.

The City cites numerous cases in which an employer was not liable for an employee's act of murder or assault. *See* City Br. at 7 n.8. But in each of those cases, the employee committed a murder or assault directly, not as a result of carrying out their normal job duties, as here. Where an employee engages in conduct typically within the scope of his job in a tortious manner, under New York law

8

his employer is liable for any resulting damage, even if it includes wrongful death. *See, e.g.*, *Medina v. Delta Air Lines, Inc.*, 09-CV-4018 NGG LB, 2011 WL 3625110, at *5 (E.D.N.Y. Aug. 16, 2011) (finding, under New York law, that Delta "would be liable to Plaintiff under respondeat superior" if its employee's tort was found to have caused the decedent's death).

### III.  Plaintiffs' Claims are Timely

#### A. New York Law

As Plaintiffs explained, their state law claims are timely under CPLR § 215(8) and EPTL § 5-4.1 because Plaintiffs filed suit within "one year from the termination of the criminal action." Pl. Br. at 20–22. Neither the City's status as a municipality, nor its status as a vicariously liable defendant, changes this outcome.

##### 1. CPLR § 215(8) and EPTL § 5-4.1 Apply to Municipalities

Defendants do not contest that tolling provisions are applicable to claims involving New York City, nor could they. New York has "consistently treated the year-and-90-day provision contained in [the municipal statute of limitations] section 50-i . . . as a statute of limitations subject to CPLR article 2 tolling." *Campbell v. City of New York*, 4 N.Y.3d 200, 201–02 (N.Y. 2005) (applying CPLR § 205(a) to a claim against the City, allowing a plaintiff to refile her state law claims against the City within six months after a federal court declined to exercise pendant jurisdiction).

The City argues, however, that CPLR § 215(8) and EPTL § 5-4.1, are not tolling provisions. This ignores the numerous courts that have affirmatively described CPLR § 215(8) and EPTL § 5-4.1 as tolling rules. *See, e.g.*, *Clemens v. Nealon*, 608 N.Y.S.2d 370, 371 (N.Y. App. Div 3d Dep't 1994) (finding plaintiff's claim timely due to the "tolling provisions of CPLR 215(8)); *id.* at 371 n.1 (EPTL 5–4.1 "contains the same tolling provisions as CPLR 215(8)"); *Burke v. State*, 565 N.Y.S. 2d 728 (N.Y. App. Div. 2d Dep't 1991) (addressing the "tolling provision of CPLR 215(8)").

The City cites no authority supporting its argument that CPLR § 215(8) and EPTL § 5-4.1,

9

unlike other tolling rules, cannot be applied to municipalities. Indeed, CPLR § 215(8) falls within CPLR article 2, whose tolling provisions the New York Court of Appeals has explicitly held apply to claims against the city. *See Campbell*, 4 N.Y.3d at 204. Defendants cite *Jordan v. Briton*, but in that case the Fourth Department recognized that CPLR § 215(8) and EPTL § 5-4.1 had been described as tolling rules by the "statute's commentators." 128 A.D.2d 315, 319 & n.2 (N.Y. App. Div. 4th Dep't 1987). It held, however, that this characterization was not "determinative" to the issue before it— whether the plaintiff's claim was timely—and went on to find that the claim *was* timely, given that it had been filed within one year of termination of the related criminal case. *Id.* The court explained that "the history and purpose of the amendment indicate [that] the intent of [EPTL § 5-4.1] was *to extend the time period* within which a personal representative could bring suit." *Id.* (emphasis added).[6]

Finally, the City argues that even if CPLR § 215(8) and EPTL § 5-4.1 are tolling rules, they do not apply to the City because each applies to a "claim governed by this section." City Br. at 15 (quoting CPLR § 215(8); *see also* EPTL § 5-4.1 (the tolling rule applies to a "claim under this section")). That language simply means that each provision tolls the *substantive* claims set out in each section—intentional torts in CPLR § 215, and wrongful death in EPTL § 5-4.1 *et seq.* It says nothing about application to particular *defendants*. The City cannot dispute that it may be vicariously liable for either of these causes of action. *Cf.* CPLR § 214-a (tolling rule for continuous medical treatment is applicable only to substantive claims for medical malpractice, and applies in suits against municipalities, *see Ogle v. State*, 142 A.D.2d 37, 39 (N.Y. App. Div. 3d Dep't 1988)).

### 2. CPLR § 215(8) and EPTL § 5-4.1 Apply to Vicariously Liable Defendants

The City further argues that CPLR § 215(8) and EPTL § 5-4.1 do not apply to suits against

---

[6] Defendants also point to GML § 50-i(2), which provides that the statute of limitation in § 50-i(1) applies "notwithstanding any inconsistent provision of law." But as noted, New York's tolling provisions have repeatedly been held to apply to claims involving the City and thus are not "inconsistent" with GML § 50-i. And *Wright v. City of Newburgh*, 259 A.D.2d 485 (N.Y. App. Div. 2d Dep't 1999), which Defendants cite, did not address tolling in CPLR § 215(8) at all.

10

vicariously liable parties, but only cites cases holding that § 215(8) does not apply to *non*-vicariously liable parties, such as accomplices, *Hirt v. Mancuso*, 82 A.D.3d 1647, 1648 (N.Y. App. Div. 4th Dep't 2011), and the owners of premises where a tort occurs, *Ross v. Saravanos*, 2011 WL 2011673 (N.Y. Sup. Ct. May 7, 2011). These cases cannot undermine the application of CPLR § 215(8) to *vicariously liable* parties. As Plaintiffs explained, vicarious liability is unique in that the liability for an employer, and employee acting within the scope of her employment, are identical. *See* Pl. Br. at 21. The same is not true for accomplices or premise owners.

*Ross* used this distinction to explain why a premises owner did not fall within the ambit of 215(8): "[a] hotel owner has a *separate and independent duty* to provide reasonable security to protect its guests against criminal acts where such acts are reasonably foreseeable." *Id.* at *9 (emphasis added). In contrast, vicarious liability "applies to preexisting relationships between the wrongdoer and the person on whom liability is sought to be imposed, where one party has the authority to control the actions of the other (as in an employer-employee relationship), and therefore is responsible for the other's wrongdoing." *Id.* (discussing *Alford v. St. Nicholas Holding Corp.*, 218 A.D.2d 622 (N.Y. App. Div. 1st Dep't 1995).

The City furthermore fails to grasp the significance of the Legislature's choice to limit application of a different statute, CPLR § 213-c, to claims against only the perpetrator or one who could be criminally charged for the offense. Defendants point out that the definition of "defendant" in CPLR § 213-c is "limited . . . to that particular section." City Br. at 17 n.14. That is the whole point: the legislature chose to use specific, limited language in CPLR § 213-c that it did *not* use in CPLR § 215(8) or EPTL § 5-4.1. As *Ross* explained:

> Interestingly, in 2006, at the same time that the Legislature amended CPLR 215(8), the Legislature added a five year period for civil actions against "defendants" under CPLR 213-c. Defendants were specifically defined to "mean only a person who commits the [sexual] acts described." Yet, despite the conflict in the case law involving CPLR 215(8), the Legislature did not clarify that the "same defendant" was limited, as the defendant in CPLR 213-c was, to the perpetrator. Accordingly, the Legislative history provides support for the conclusion that "the

11

same defendant" [in CPLR 215(8)] does not have to be the same person. 2011 WL 2011673, at *9–10.

Finally, applying *Alford* in this case would not lead to inconsistent results among the consolidated actions. In *Morris v. City of New York*, the plaintiff argued CPLR § 213–b, not CPLR § 215(8), applied. 16 Misc. 3d 1126(A), at *2 (N.Y. Sup. Ct. Aug. 21, 2007). And in *Matter of Pipitone v. City of New York*, the court determined that vicarious liability did not apply under New York law. 38 A.D.3d 557, 558 (N.Y. App. Div. 2d Dep't 2007). Even if those decisions were in conflict, this Court is not obligated to follow non-binding state trial court decisions.

### 3. Plaintiffs Have Satisfied New York's Notice of Claim Requirement

"The underlying policy of the [Notice of Claim] statute is to ensure that before litigation is commenced the City is given an adequate opportunity to investigate the claim." *Yang Feng Zhao v. City of New York*, 656 F. Supp. 2d 375, 403 n.24 (S.D.N.Y. 2009). "New York Courts and commentators have stated that '[t]he only legitimate purpose served by the notice is prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise,' and have noted that the regulations for notices of claim have become progressively more flexible as time has passed." *Cunninham v. New York City*, 04 CIV. 10232 (LBS), 2008 WL 1944696, at *2 (S.D.N.Y. May 1, 2008) (quoting *Beary v. Rye*, 44 N.Y.2d 398, 412 (N.Y. 1978) (internal quotation omitted)).

The City does not allege that it lacked sufficient notice of the Di Lapi's claims before they filed suit. The City received the Di Lapi's Notice of Claim on August 12, 2005. D.E. 101 (City of New York's Answer to First Amended Complaint), at 2–3, ¶ 10. Plaintiffs did not file suit until the following year, on June 22, 2006. D.E. 1 (Complaint). In the interim, the City had ample time to investigate the claims, and even questioned Sal Di Lapi at a 50-h hearing. *Cf.* N.Y. Gen. Mun. L § 50-e(3)(c) (allowing for defects in a notice of claim to be excused "if the public corporation

12

demands a section 50–h hearing").

Although—not surprising, given the atypical facts of this case—there are no reported cases directly addressing this issue, the weight of authority suggests that where, as here, § 215(8) and EPTL § 5-4.1 are found to toll claims against the City of New York, New York would find Plaintiffs' Notice of Claim timely as well. *See* Pl. Br. at 22; *cf. Yang Feng*, 656 F. Supp. 2d at 403 (finding "[i]n the somewhat unusual circumstances of this case . . . that the state courts would" find the Notice of Claim requirement met). For example, in medical malpractice cases, the statute of limitations is tolled during a "continuous course of treatment" under the policy rationale that "a patient should not be required to interrupt corrective medical treatment . . . in order to ensure the timeliness of a medical malpractice action." *Young v. New York City Health & Hosps. Corp*, 91 N.Y.2d 291, 296 (N.Y. 1998). This toll applies against municipalities, and will also "toll the 90-day period within which a notice of claim must be filed under General Municipal Law § 50-e." *Plummer ex rel. Heron v. New York City Health & Hosps. Corp*, 98 N.Y.2d 263, 267 (N.Y. 2002).

New York would likewise toll the 90-day period within which a notice of claim must be filed here, finding timely a notice of claim filed before the end of the statutory extension in CPLR § 215(8) and EPTL § 5-4.1. Similar to continuous-treatment tolling, CPLR § 215(8) and EPTL § 5-4.1 were enacted on the policy rationale that a crime victim should not have to bring a civil suit before related criminal proceedings had concluded. *See Gentile v. Cnty. of Suffolk*, 711 F. Supp. 724, 728 (E.D.N.Y. 1989) ("Section 215(8) . . . was passed . . . to protect the victims of a crime . . . . It permits apparent victims to await the criminal trial of those that allegedly have injured them by criminal acts before suing in civil court."). If anything, Plaintiffs' Notice of Claim gave the City additional notice, as it was served before Eppolito and Caracappa were convicted, and nearly four years before March 11, 2009, when Caracappa was resentenced and his criminal case was ultimately terminated.

13

### B. California Law

Plaintiffs' claims are likewise timely under California law. As Defendants recognize, accrual of a claim in California follows the "discovery rule," which is the same standard as under federal law. *See Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 926–27 (Cal. 1988) ("The discovery rule provides that the accrual date of a cause of action is delayed until the plaintiff is aware of her injury and its negligent cause."). For the same reasons as discussed in Plaintiffs' Response to Defendant's Motion for Summary Judgment, Plaintiffs did not and could not have discovered that Eppolito and Caracappa, and thus the City, were liable for their father's death. *See* Pl. Resp. to City Def. Mot for SJ at 70–87. In addition, California would liberally exercise equitable doctrines in this case to find Plaintiffs' claims timely. *See* Pl. Br. at 24–25.

### IV. This Court Does Not Need to Relitigate Eppolito and Caracappa's Involvement in Di Lapi's Death Out of Fairness Concerns to the City

The City does not challenge that the same facts that established Eppolito and Caracappa's guilt in their criminal trial also make them liable for Di Lapi's assault, battery, and wrongful death. *See* Pl. Br. at 12–14. But the City apparently seeks to contest Eppolito and Caracappa's underlying criminal responsibility. The only argument the City makes to justify relitigating those questions here is that collateral estoppel should not apply "out of fairness concerns," because the jury's findings were "ambiguous" and tainted by "spillover prejudice." City Br. at 24–25. There is no ambiguity in the jury's findings. They have been exhaustively addressed and upheld by the Second Circuit, which specifically rejected challenges based on sufficiency of the evidence. *See United States v. Caracappa*, 614 F.3d 30, 43 (2d Cir. 2010). Defendants admit that Kaplan testified that Caracappa gave Kaplan Di Lapi's address, twice, ultimately leading to Di Lapi's death. City Br. at 26 n.20. Even if Eppolito was not directly involved in this transaction, that is no reason to question Eppolito's conviction under the Racketeer Influenced and Corrupt Organizations Act (RICO); a defendant is liable for acts of his co-conspirators committed within the scope of the conspiracy. *See, e.g.*, *United States v. Yannotti*, 541

14

F.3d 112, 123 (2d Cir. 2008) (a defendant is liable for "predicate acts by co-conspirators" if they fall "within the broad pattern of racketeering activity through which [the defendant] agreed that he and others would conduct the affairs of the enterprise"). And the City offers *no* reason at all to question the conviction of Caracappa, whose conduct alone provides sufficient grounds on which to find the City vicariously liable for Di Lapi's wrongful death.

The underlying responsibility of Eppolito and Caracappa for Di Lapi's murder has already been determined. Given the large number of parties, amount of evidence, and questions at issue in these consolidated cases, there is no reason for it to be relitigated here.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment against Defendants Eppolito, Caracappa, and the City of New York (under respondeat superior) for Anthony Di Lapi's assault, battery, and wrongful death.

Dated:      September 27, 2013
            New York, New York

                                            _____
                                            Barry Scheck
                                            Nick Brustin
                                            Emma Freudenberger
                                            Alexandra Lampert
                                            Aaron Scherzer
                                            NEUFELD SCHECK & BRUSTIN, LLP
                                            99 Hudson St., 8th Floor
                                            New York, NY 10013
                                            (212) 965-9081
                                            *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Plaintiffs' Reply to Defendant City of New York's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment was served via ECF on September 27, 2013, upon:

Michael Chestnov
Assistant Corporation Counsel
The City of New York
Law Department
100 Church Street
New York, NY 10007

Saul Warren Bienenfeld
Bienenfeld & Associates
26 Broadway, 21st Floor.
New York, NY 10004

Benjamin Brafman
Brafman & Associates, PC
767 Third Avenue, 26th Floor
New York, NY 10017

Mark A. Longo
Law Offices of Mark A. Longo
26 Court Street, Suite 1700
Brooklyn, NY 11242

Andrew C. Laufer
Law Office of Andrew C. Laufer, PLLC
255 West 36th Street, Suite 1104
New York, NY 10018

Michaelangelo Matera
Law Office of Michaelangelo Matera
560 Broadhollow Road, Suite 106
Melville, NY 11747

Barry E. Schulman
16 Court Street
Brooklyn, NY 11214

Cody McCone
O'Dwyer & Bernstein, LLP
52 Duane Street
New York, NY 10007

And was served upon the following parties by U.S. Certified Mail:

Steven Caracappa, Reg # 04597-748
USP Coleman II
U.S. Penitentiary
P.O. Box 1034
Coleman, FL 33521

Louis Eppolito
USP Tucson
U.S. Penitentiary
P.O. Box 24550
Tucson, AZ 85734

*Rhianna Rey*
_____
Rhianna Rey
Paralegal

16